RENDERED:  JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0046-MR

DEL'SHAWN BANKS                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE MITCH PERRY, JUDGE
ACTION NO. 21-CR-001848

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Del'Shawn Banks brings this appeal from a Judgment of
Conviction and Sentence entered by the Jefferson Circuit Court on December 11,
2024, upon a jury verdict finding him guilty of second-degree manslaughter and
sentencing him to ten-years' imprisonment.  We affirm.

## BACKGROUND

Banks and his live-in girlfriend, Courtney Jones, had a child together
who was born on April 24, 2021.  About seven weeks after the child's birth, on the

morning of June 17, 2021, Jones had a medical emergency and Banks drove her to the emergency room at Norton Hospital in downtown Louisville. Because of restrictions in place due to the COVID-19 pandemic, Jones went in alone. Banks returned to his home with the child.

While watching television at home, Banks determined that the child had become unresponsive. In a panic, he sped to the nearest medical facility, Norton Children's Medical Group on Poplar Level Road, which was not an emergency trauma facility nor a medical facility that had treated the child before. Banks took the baby girl into the doctors' office in her car carrier, screaming that she was unresponsive and needed help. Medical personnel determined that the child did not have a pulse and was not breathing. They started CPR, placed her on oxygen, used a defibrillator, and contacted Emergency Medical Services (EMS). EMS arrived and began treating the child on site and immediately transported her by ambulance to Norton Children's Hospital. At the hospital, tests revealed that the child had a skull fracture with subdural bleeding. The child was resuscitated at the hospital, but two days later she was removed from life-support and pronounced dead.

Later, on June 17, two police detectives from Louisville Metro Police Department (LMPD) questioned both Banks and Jones separately at the hospital for background information on the child's medical history and care. This first

interview with Banks lasted about an hour and was recorded on bodycam video. After a second interview at the hospital, the police then asked Banks to accompany them to the police station for a follow-up interview and he voluntarily agreed.

The police drove Banks to the police station and placed him in an interrogation room. While in the room, Banks was not restrained. At the outset of the first interview, which lasted a little over an hour, the detectives told Banks that he was free to leave at any time. The interviews at the station were also recorded on video. Before a second interview, which began about an hour later, a detective began by reading Banks his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Banks agreed to continue talking with the detective. During a third interview at the station, Banks made incriminating statements. Banks was not arrested for the child's death until June 21, 2021.

Banks was indicted by the grand jury for one count of murder on August 26, 2021. His trial was conducted over a two-week period from September 9, 2024, through September 20, 2024. The jury found Banks guilty of manslaughter in the second degree. He was subsequently sentenced to ten-years' imprisonment on December 11, 2024. This appeal follows.

## ANALYSIS

Banks raises three issues on appeal. First, he argues that the trial court erred in limiting questions he could ask jurors during *voir dire* regarding his

defense of false confession. Second, Banks asserts the trial court erred by not granting his motion to suppress incriminating statements made by him while undergoing police questioning on June 17-18, 2021. Third, Banks argues this Court should reverse his conviction for cumulative errors made by the trial court during the trial. We will address each issue and applicable standard of review in the order raised by Banks in his brief.

Banks' first allegation of error is that the trial judge erred in preventing him from questioning the jury pool on whether they were open to the idea that someone who admitted to criminal acts could have made a false confession. Defense counsel began this effort by stating:

> Counsel: Now in this case, or I assume, you may hear evidence, I believe you will hear evidence that the defendant ultimately gave a statement, gave what they're saying, gave a confession, okay?

Video Record (V.R.) September 10, 2024 – Trial at 12:12.

The Commonwealth interrupted and asked to approach the bench. At the bench, the judge immediately engaged in the following exchange with defense counsel:

> Court: You don't get to forecast that. So, pick another topic or let's close it out.

> Counsel: Okay. Let me just, Judge, what I was trying to do is, the defense in this case is false confession and there's probably, I think there's people who cannot

-4-

consider that – that a confession could be false. And since that's the defense, I wanted to *voir dire* on that.

Court: I understand your position, but the only way to do that is to talk about the evidence in the case and I won't permit it. So if you have, you're certainly welcome to argue that in the opening but that is not a proper topic on *voir dire*. I am going to close this, though. I'm going to get to ask the last question, and summarize everything they know, or do know and is there anything else? It's been very good so far; I just can't permit that. It goes too far.

Counsel: I understand, Judge. Just so I don't keep running back up here, Judge, this is what I would have asked. . . .

Court: Sure.

Counsel: Has anyone here heard of false confessions? What is a false confession? Would people here think that's impossible, that you wouldn't confess? Would you automatically believe you wouldn't confess if you weren't guilty? That no one who was innocent would give a confession like that? Are there people here who would not consider a false, saying a confession was false, or listen to the evidence about it? Those are the questions I would have asked.

Court: Okay, everything's the same. It wouldn't matter in any case. This is very similar to a medical malpractice, of course, which I do all the time, but whether it's a police officer, or a nurse, a doctor, a teacher, a CPS worker, every witness stands on their own. And they either believe them or they don't. It's not the purpose of *voir dire* to teach some theory. So, I appreciate your request and your record, but I disagree and you can't do it.

Counsel: So I can't ask about false confessions?

Court: You cannot.

V.R. September 10, 2024 – Trial at 12:12:15-12:14-25.

Based on the court's ruling, the defense finished its *voir dire* questioning on other topics. In his opening statement, Banks' counsel returned to the topic of false confessions and spoke for over fifteen minutes on the matter. He informed the jury that the defense would present evidence on the research and science showing that there are such things as false confessions. V.R. September 11, 2024 – Trial at 10:24:50-10:41-20.

On appeal, Banks alleges the trial court's *voir dire* limitation was in error. The Commonwealth responds that the trial court proceeded correctly within its discretion because the defense was attempting to get the prospective jurors to commit to a theory surrounding false confessions. Banks counters that a review of his counsel's proposed questions shows that he was looking for bias, and not trying to educate the jury on a theory or indoctrinate jurors to produce a particular response. More specifically, Banks argues that he was erroneously prohibited from "asking about jurors' potential biases against false confessions." Banks' Brief at 15. This allegedly prevented Banks from weeding out unqualified jurors and obtaining a fair trial.

"'[T]rial courts are granted broad discretion and wide latitude in their control of the voir dire examination under [Kentucky Rules of Criminal Procedure]

-6-

RCr 9.38.'" *Holbrook v. Commonwealth*, 525 S.W.3d 73, 89 (Ky. 2017) (quoting *Rogers v. Commonwealth*, 315 S.W.3d 303, 306 (Ky. 2010)). Accordingly, limitations on *voir dire* are reviewed for an abuse of discretion. *Ordway v. Commonwealth*, 391 S.W.3d 762, 784 (Ky. 2013). And because the extent of counsel's direct questioning during *voir dire* is under the discretion of the trial court, our Supreme Court has instructed that "a party . . . has 'no absolute right to question prospective jurors [with respect to particular matters.]'" *Commonwealth v. Doss*, 510 S.W.3d 830, 837 (Ky. 2016) (quoting *Grooms v. Commonwealth*, 756 S.W.2d 131, 134 (Ky. 1988)). It is also well-settled that "it is impermissible to ask *voir dire* questions designed to commit jurors to certain theories." *Sherroan v. Commonwealth*, 142 S.W.3d 7, 14 (Ky. 2004). "The mere fact that more detailed questioning might have . . . helped the accused in exercising peremptory challenges does not suffice to show the abuse of discretion" in restricting the examination. *Woodall v. Commonwealth*, 63 S.W.3d 104, 116 (Ky. 2001).

The court's discretion is not unlimited, and the appellate courts will review for abuse of that discretion and for whether prejudice was caused by any limitation. *Hayes v. Commonwealth*, 175 S.W.3d 574, 583 (Ky. 2005); *Webb v. Commonwealth*, 314 S.W.2d 543, 545 (Ky. 1958). In doing so, we are mindful that it is not enough that *voir dire* questions might be helpful in assessing whether a juror is impartial; they are constitutionally compelled only if the court's failure to

allow them would render the defendant's trial fundamentally unfair. *Jacobsen v. Commonwealth*, 376 S.W.3d 600, 608 n.2 (Ky. 2012) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 416 (1991)).

Upon review of the record below, we conclude the trial court was well within its discretion to deny counsel's questioning about false confessions. The burden was on Banks to show that the *voir dire* limitation rendered the trial fundamentally unfair, and this he has failed to do. Banks' arguments on appeal are speculative at best. Thus, Banks failed to establish that the trial was rendered fundamentally unfair by the limitation on *voir dire*. Moreover, as the trial judge observed, Banks was able to present his defense of a possible false confession in his opening argument and through an expert witness on the subject at trial.

Banks next contends that the trial court erred when it denied his motion to suppress the statements he made to investigating detectives during his interrogation on June 17-18, 2021. He maintains that the only evidence tying him to the death of the child was his confession. He argues that his statements should have been suppressed because the detectives engaged in custodial questioning without first advising him of his constitutional right to remain silent, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). He additionally argues that suppression

was required because the circumstances of his questioning show that the confession was coerced.[1]

Banks' motion to suppress stated that his constitutional rights were violated by LMPD detectives when they interrogated him for over six hours while in custody without advising him of his *Miranda* rights. Record at 93. The suppression motion noted that the first two hours of questioning took place before Banks was advised of his rights and argued that a "warning in the middle of interrogation does not adequately and effectively warn a suspect in a meaningful way." Record at 94. Additionally, the motion stated that Banks' "will was worn down by the lengthy and accusatory interrogation[.]" Record at 94. Banks later filed a supplemental suppression motion arguing that he was denied his right to counsel and was arrested without probable cause. Record at 103-04. Banks also filed another supplemental suppression motion in which he argued that his statement was obtained in violation of the prohibition in *Missouri v. Seibert*, 542 U.S. 600 (2004). Record at 124-25.

---

[1] Del'Shawn Banks was interviewed a total of five times by police on June 17-18, 2021. He was interviewed twice at the hospital and three times at the police station. His interrogation at the police station was the primary basis for the motion to suppress.

Following a suppression hearing on June 26, 2023, the trial court denied Banks' motion.[2] By Opinion and Order entered August 30, 2023, the court concluded:

> Mr. Banks was *Mirandized* at the beginning of the fourth and fifth interviews, so the question for these interviews focuses on voluntariness and the so-called "*Miranda*-in-the-Middle" technique. The Supreme Court expressly forbade techniques such as that in *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Seibert*, officers deliberately did not *Mirandize* or record the initial statement of the person whom they viewed as a suspect until they obtained a statement admitting some level of guilt. This tactic was designed to elicit a confession before turning on a recorder to memorialize a reiterated confession the suspect believed he had already made. Kentucky courts have adopted the narrowest holding in *Seibert* however, precluding the use of this technique only where police deliberately employ the technique to circumvent the suspect's *Miranda* rights. *Jackson v. Commonwealth*, 187 S.W.3d 300, 309 (Ky. 2006).
>
> That clearly did not happen in this case. There was no off-camera questioning of Mr. Banks here, or any technique involving the eliciting of a statement off the record then asking him to reiterate the remark on the record. The *Miranda* warnings came before any incriminating remarks and thus *Seibert* does not apply to this situation. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 32 (Ky. 2011). Therefore, any suggestion that officers delayed in giving *Miranda* warnings as part of a technique or tactic to elicit a confession is contrary to the facts of this case.

---

[2] The police bodycam videos were submitted as the Commonwealth of Kentucky's exhibits at the suppression hearing.

Finally, turning to the issue of voluntariness, this is similarly easily dismissed. Mr. Banks was questioned for approximately four hours in total. Courts have not set a time limit on interviews, but that is clearly an insufficient length to render the statements involuntary. Further, Mr. Banks is educated, relatively sophisticated, and as pointed out numerous times in his brief, he is a military veteran. Mr. Banks was additionally taken home after the interviews were concluded. He was not arrested until several days later. *There is neither evidence of coercive police conduct, nor evidence that the will of Mr. Banks was overwhelmed by coercive conduct during any of these interviews. All of the statements Mr. Banks made were thus voluntary.*

Record at 173-74.

Our review on appeal of the denial of a suppression motion has two prongs. "First, we defer to the trial court's factual findings if they are supported by substantial evidence" and review those findings for clear error. *Bond v. Commonwealth*, 453 S.W.3d 729, 732 (Ky. 2015). "Second, when the findings of fact are supported by substantial evidence, we review the court's application of the law to those facts *de novo*." *Id*.

Law enforcement must advise a suspect of their right to remain silent and their right to the assistance of counsel prior to subjecting the suspect to a custodial investigation. *Bowman v. Commonwealth*, 686 S.W.3d 230, 241 (Ky. 2024) (citing *Miranda*, 384 U.S. at 471-72). Thus, the threshold issue in any case involving an allegation of violation of *Miranda* rights is whether the defendant was subject to a custodial interrogation at the time he claims the violation occurred,

-11-

because only statements made during custodial interrogations are subject to suppression under *Miranda*. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 410 (Ky. 2004)).

Whether one is in "custody requires a formal arrest or restraint on the subject's freedom of movement comparable to a formal arrest." *N.C. v. Commonwealth*, 396 S.W.3d 852, 856 (Ky. 2013) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). "The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006). Our courts have identified a number of factors to examine for the existence of custodial restraint: location of interview(s); number of law enforcement personnel present; tone of voice or language used suggestive of compelled compliance; brandishing or display of weapons; any physical touching of the suspect; whether the suspect was restrained; statements made during the interview; duration of interview; and whether the suspect was released after the interview. *Hernandez v. Commonwealth*, 671 S.W.3d 217, 224 (Ky. 2023).

On appeal, Banks alleges that the trial court erred in finding Banks was not in custody and in concluding that a reasonable person would have felt free to leave. Banks' Brief at 21. Banks argues that he could not have felt free to leave when he did not have his car, his phone to call anyone, or his house keys, the latter

-12-

having been taken by the police in order to conduct a search of his house that same evening. Banks emphasizes that he was placed in a locked police interrogation room. Additionally, he argues that the trial court's assessment of the total time of interrogation does not take into consideration the entire length of his questioning because there were gaps between interviews of sometimes over an hour.

We do not find that any of these attending circumstances on June 17-18 contradicts the trial court's findings, or the court's conclusion that a reasonable person would have felt free to leave. The fact that questioning took place at the police station standing alone does not transform the questioning into a custodial interrogation. Kentucky recognizes a presumption that the interrogation in a police station interrogation room is custodial in nature, but that presumption can be overcome if, for example, it is shown "that the defendant was informed that he was not under arrest, that he was free to leave at any time, and that he did, in fact, leave at the conclusion of the interrogation." *Simms v. Commonwealth*, 529 S.W.3d 301, 305 (Ky. App. 2017). Here the record supports the trial court findings that at the first interview at the police station, before the *Miranda* warning was given, the detectives did inform Banks that he was free to leave.

Since Banks was driven to the police station by the detectives, he was naturally dependent on them to leave the station. This is not an unusual circumstance. But there is no evidence below of Banks requesting to be taken to

-13-

his car, or to the hospital by the police; and no comment or action taken by the police contradicting their position that he was free to leave. Needing transportation to leave the station does not by itself mean a reasonable person would feel they had to stay despite being told he was free to leave. The same is true for Banks' keys and phone – Banks did not ask for their return and the police did not indicate they would refuse to return them. *Cf. Peacher v. Commonwealth*, 391 S.W.3d 821, 848 (Ky. 2013) (separation from phone not sufficient to place one in custody). "Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual." *Lucas*, 195 S.W.3d at 405. Given the police statements and the lack of restraint, Banks is mistaken that he was in custody when the interviews at the police station began. Therefore, the findings by the trial court that Banks was not in custody before his *Miranda* rights were given were supported by substantial evidence below. We further agree with the trial court that any custodial interrogation of Banks in the early morning on June 18, 2021, was after he had been given his *Miranda* rights.

Next, Banks alleges that the fact he was not *Mirandized* until the second interview at the police station shows that the police were deliberately depriving him of his rights. We disagree and affirm the trial court's conclusion that the police did not deliberately question him using a "*Miranda* in the middle" technique. The trial court correctly found that no incriminating statements were

-14-

elicited before Banks was *Mirandized*, as he continued to assert that he did not know how the child was injured, and so the technique as forbidden in *Jackson* was not utilized in this case.

In addition to the allegation of a *Miranda* violation, Banks claims that his statements to police were involuntary and should have been suppressed under the Due Process Clause. Any use of a defendant's involuntary statement at a criminal trial is a denial of due process of law. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). "[T]he threshold question to a voluntariness analysis is the presence or absence of coercive police activity: 'coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.'" *Bailey v. Commonwealth*, 194 S.W.3d 296, 300 (Ky. 2006).

To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). Use of a totality of the circumstances analysis embodies this belief that voluntariness cannot "[turn] on the presence or absence of a single controlling criterion" but rather a "careful scrutiny of all the surrounding circumstances." *Schneckloth*, 412 U.S. at 226. Our Supreme Court summarized the inquiry to assess voluntariness as: "1) whether the police activity was 'objectively coercive;'

2) whether the coercion overbore the will of the defendant; and 3) whether the defendant showed that the coercive police activity was the 'crucial motivating factor' behind the defendant's confession." *Henson v Commonwealth*, 20 S.W.3d 466, 469 (Ky. 1999). Banks has failed to establish any of these factors were present below.

Banks argues that the trial court's conclusions were erroneous since the totality of the circumstances here showed an environment which isolated him and in which the police questioning was coercive. Specifically, he points to the facts that he informed the detectives of his lack of sleep, and that his interviews occurred over a matter of hours. In addition, he argues that the questioning was coercive because the police deceptively minimized the hazard to him by repeatedly saying that they were there to help him, that explaining what happened would be to his benefit, and suggesting to him the method of how the child was injured. Again, based on our review, we do not find that these circumstances rose to the level of coercion which would negate the voluntariness of his statements to the police. Accordingly, we find no error in the trial court's ruling denying the motion to suppress.

Finally, Banks argues that this Court should reverse the verdict based on cumulative error below. The cumulative error doctrine provides that "multiple errors, although harmless individually, may be deemed reversible if their

cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Finding no errors by the trial court below for the reasons stated, this argument also fails.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Robert C. Yang | Russell Coleman |
| Assistant Public Advocate | Attorney General of Kentucky |
| Department of Public Advocacy | |
| Louisville, Kentucky | Joseph A. Beckett |
| | Assistant Attorney General |
| | Office of the Solicitor General |
| | Frankfort, Kentucky |